CORA ALLEN, APPELLEE, v. ARTHUR H. RUSHFORT, APPELLANT.

FILED NOVEMBER 19, 1908.     No. 15,618.

1. Sales: PASSING OF TITLE. Plaintiff sold to defendant 40 acres of standing hay at the agreed price of $4.50 a ton, the hay to be weighed and paid for before taken from the farm. The defendant took possession, cut and stacked the hay, and baled and hauled away six loads thereof. *Held*, That title to the entire crop passed to the defendant.

2. ———: EVIDENCE. When the sixth load was being weighed, the defendant questioned the correctness of the scales, which it was agreed should be used, and refused to take away or pay for the hay remaining in the field, claiming that the plaintiff refused to allow the hay to be weighed elsewhere. *Held*, That the evidence sufficiently supported the plaintiff's contention that she offered to accept railroad weights or to have the scales, of which defendant complained, inspected and corrected, if out of order, by a party named by the defendant.

3. ———: DAMAGES: DUTY OF SELLER. If it be conceded that, because of the lien reserved on the hay for the purchase price thereof, a duty rested on the plaintiff to sell such part of the hay as the

defendant refused to take and pay for, and apply the proceeds in reduction of her damages, still she was relieved of any supposed duty in that respect by the defendant's refusal to allow her to make such sale.

4. ———: ACTION: VERDICT. There is evidence that the hay would average two to three tons an acre. Only $50 of the purchase price has been paid. *Held,* That a verdict for $351 in favor of the plaintiff is not excessive.

APPEAL from the district court for Douglas county: GEORGE A. DAY, JUDGE. *Affirmed.*

*Dan J. Riley* and *Martin & Ayres,* for appellant.

*Weaver & Giller, contra.*

DUFFIE, C.

This is the third appeal in this case. While the facts are very fully stated in the opinion written by Judge LETTON on the first appeal (72 Neb. 907), a brief summary of these facts will tend to convenience in discussing the legal questions involved. The plaintiff was the owner of 40 acres of land upon which there was a crop of timothy hay. This crop she sold to the defendant; the parties executing the following agreement: "This agreement, made this 30th day of June, 1902, between Cora Allen and A. H. Rushfort, of Omaha, witnesseth, that the first party has sold to the second party the crop of timothy hay now growing on the northwest quarter of the southeast quarter of section 17, town 16, range 10, for $4.50 per ton net to the first party; the hay to be paid for before taken from the farm. The first party has paid $50 cash to bind the bargain. (Signed.) Cora Allen, Arthur H. Rushfort. Witness, J. W. Kennedy." It was verbally agreed that the hay was to be weighed upon scales standing upon the premises of the plaintiff's mother. The defendant entered upon the land, cut and stacked the hay, and at a subsequent date took a hay press to the land and pressed and baled three of the stacks. Five loads of the baled hay were weighed upon the scales agreed on and

taken to Valley, a nearby railroad town, for shipment. When the sixth load was driven upon the scales to be weighed, the plaintiff found that the weight of the load was beyond their capacity, or rather that there were not sufficient weights to bring down the balance beam of the scales, and she sent to the field for the defendant, and on his arrival 14 bales were taken off the load, the remainder of the load weighed, after which the 14 bales were placed upon the scales and weighed separately. Up to this point there is no conflict in the evidence and no disagreement between the parties. At this time the defendant complained that the hay was not being correctly weighed, and because, as he insists, the plaintiff refused to allow the hay to be weighed on other scales, he abandoned his contract and refused to take away and pay for the hay still remaining in the field. This action was brought by the plaintiff to recover the full purchase price of the hay contracted for.

That the defendant had reason to believe the scales on which the hay was being weighed were out of order or being manipulated is shown by scale tickets received from the owner of scales in Valley, where, as he claims, two or more of the same loads were weighed, with results differing materially from that given by the scale of plaintiff's mother. If the scales agreed upon by the parties were out of order or so manipulated by the plaintiff as to work to the injury of the defendant, and the plaintiff refused to have the hay weighed elsewhere, or to have the scales on her mother's premises inspected and corrected so as to give the true weight, the law is clear that the defendant might then refuse to proceed with his contract, and the plaintiff could have no cause of action against him, except for the hay actually taken away. The material question is, therefore: Did the scales upon which the hay was being weighed give incorrect weights, and, if so, did the plaintiff refuse to have them inspected and corrected, or to have the hay weighed on other scales where correct weights might be obtained? The jury found these ques-

.tions in favor of the plaintiff, and this was based upon testimony amply sufficient to support the findings.

Relating to the controversy which arose between the parties at the time of weighing the sixth load, the plaintiff testified as follows: "I insisted on getting legal weights. I insisted on having legal weights, either Whitmore's weights or railroad weights or getting the scales fixed. I said any way we could do to have it right. All I asked for was to have it right. Then he became angry and swore, and took his machinery right away." Relating to what took place between them about fixing the scales at the farm, she testified as follows: "I said I would have the scales fixed. I asked him if he knew any one that would fix the scales. He said, 'No.' But when he got down to Valley I saw him at the drug store. He said such a man at Omaha. He said Engleman. He wrote a message, and I had the telephone man send the message to Omaha. He wrote the words I could send to get the man to fix the scales." Again she testified: "I asked him to take the hay, and told him I would do anything so that it was legal. I insisted upon him putting money in the bank covering balance of the hay he had taken. I did not know how much it was at the time. He said he did not know. I said he could easily find out by getting railroad weights. Q. Well, what did you say about taking railroad weights? A. I said I would." Plaintiff's evidence above quoted, and the fact that she sent to Omaha for a scales inspector named by the defendant himself, is ample evidence upon which to base a finding that plaintiff did not refuse to allow the hay to be fairly weighed.

The defendant insists that it was the duty of the plaintiff, when he refused to take away the hay left in the field, to take possession of it and dispose of it to the best advantage and save the defendant from damage to the extent of her ability. In the first opinion filed we held that title to the hay vested in the defendant upon the making of the contract, and this holding was followed in *Baker v. McDonald*, 74 Neb. 595, where we said: "The general

rule is that, when the terms of sale of personal property have been agreed on and the bargain is struck, and everything the seller has to do with the goods is complete, the contract of sale becomes absolute as between the parties without actual payment or delivery, and the property and the risk of accident to the goods vests in the buyer." That the defendant was vested with title to this hay was held on both former appeals, and we might now say that, were it not for a condition in the contract of sale that the hay should be paid for before taken from the farm, we doubt whether the plaintiff would have a lien thereon for the remainder of the purchase price. The hay was sold in bulk —a 40 acre tract. The contract contemplated that the defendant was to enter the field, cut and stack the hay, and change its character from growing grass to a marketable commodity.

In *Douglas v. Shumway,* 13 Gray (Mass.), 498, the court held that the owner of land who sells wood standing thereon, with authority to the vendee to cut it within a certain time, has no lien on the wood for the price in case of the vendee's insolvency after the wood is cut and before its removal. In the opinion it is said: "The contract of sale contemplated that the vendee should expend labor and money in felling the trees and preparing the wood for market; and the case finds that the wood had been cut by the vendee, and a portion thereof sold by him and hauled off the land. We think these facts are inconsistent with an existing right of lien in the vendor for the purchase money. We know of no case where such a right has been recognized, after the vendee has, at his own expense, in pursuance of the contract of sale, changed the character of the property, and by his own labor and money added to its value. By these acts the vendor must be deemed to have parted with his possession and control of the property. The vendee, by himself and his agents, had taken it into his actual possession, and incorporated with it the labor bestowed by him in preparing it for sale. There was therefore such a change of possession from the

vendor to the vendee as to defeat any right of lien in the vendor." The only difference between that case and the one we are considering is that here the plaintiff by her contract of sale provided that the hay should not be removed until paid for. But, if we concede that any duty rested upon the plaintiff to take possession of the hay which the defendant left in the field, still we think that the defendant's own action in the matter relieved her of such duty. Shortly after removing his hay press and machinery from the field, the plaintiff and her attorney called upon the defendant and demanded pay for the hay. This he refused. The plaintiff then asked him if he would release her from the contract so that she could dispose of the hay, and he replied that he would not. Mr. Weaver, the attorney, testified as follows: "I went down to South Omaha, and we went to Mr. Rushfort's office. Mr. Rushfort and Miss Allen did the talking. She said: 'Mr. Rushfort, I came down to see about the hay. I want to know what you are going to do about the hay?' 'I am not going to do anything about it,' he said. 'I want my money for it,' she said. He said: 'I am not going to pay you any money.' 'Well,' she said, 'I want you to release me from the contract so that I can go and sell the hay.' He said: 'I won't do that. I won't do anything about it. If you want to do anything about it, see my lawyer.' And then he turned on his heel, and we started out of the office. We went down to the lawyer's office, but he was not there, and we came back to Omaha." Under these circumstances there can be no doubt that the plaintiff was under no obligation to sell the hay or to interfere with it in any manner.

Complaint is further made that the verdict is excessive. The jury returned a verdict for $351.21. This included interest from January 3, 1903, to October 7, 1907, nearly five years. There was evidence from which the jury might have found that the hay would yield from two to three tons an acre. At the lowest estimate—two tons an acre—there would be 80 tons, which at the contract price

would amount to $360. Fifty dollars was paid in cash, leaving a balance of $310, upon which interest should be computed for nearly five years. A verdict of $400 would not be excessive.

The case has been tried four or five times, and that number of juries have found for the plaintiff in some amount. This is the third appeal to this court, and the case should be ended. After a careful examination of the record we are unable to discover any reversible error. We recommend an affirmance of the judgment.

EPPERSON and GOOD, CC., concur.

By the Court: For the reasons stated in the foregoing opinion, the judgment of the district court is

AFFIRMED.